IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN CROSS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-1379-M |
| | § | |
| DAVID BERKEBILE, Warden | § | |
| FCI-Seagoville | § | |
| | § | |
| Respondent. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner John Cross, a federal prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the application should be denied.

I.

In 2006, petitioner pled guilty to possession of ammunition by a convicted felon and was sentenced to 33 months confinement. His projected release date is March 14, 2009. While incarcerated, petitioner sought admission to a Residential Drug Abuse Program ("RDAP") for the purpose of obtaining early release under 18 U.S.C. § 3621(e). Although petitioner was admitted to a RDAP and successfully completed the program, prison officials have determined that he is not eligible for a sentence reduction under a rule promulgated by the Bureau of Prisons ("BOP") that categorically excludes from early release inmates who are serving sentences for certain weapons offenses and inmates who have prior convictions for certain violent crimes. By this action, petitioner

challenges the decision denying him early release and seeks an order granting him a one-year sentence reduction.[1]

II.

Petitioner generally alleges that prison officials violated his rights to due process and equal protection under the law by determining that he is ineligible for a one-year sentence reduction under 18 U.S.C. § 3621(e). In a related argument, petitioner contends that 28 C.F.R. § 550.58, the rule that categorically excludes certain prisoners from eligibility for early release, violates the Administrative Procedures Act ("APA"). The court will address each argument in turn.

A.

In 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913, *codified as amended at* 18 U.S.C. § 3621(b). Four years later, Congress amended the statute to provide an incentive for prisoner participation. The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897, *codified at* 18 U.S.C. § 3621(e)(2)(B) (emphasis added). The statute does not specify the requirements of a substance abuse treatment program. Instead, Congress vested prison authorities

---

[1] In its response, the government argues that this action should be summarily dismissed because the habeas petition is unsigned and petitioner has failed to exhaust his administrative remedies. (*See* Gov't Resp. at 2-4). Because neither defect is jurisdictional and petitioner is not entitled to habeas relief in any event, the court will consider his claims on the merits.

with discretion "to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and uniformly applied by the Bureau of Prisons." H.R. Rep. 103-320, 103rd Cong., 1st Sess. (1993); *see also Taylor v. U.S. Bureau of Prisons*, 172 F.3d 879 (Table), 1999 WL 84249 at *1 (10th Cir. Feb. 22, 1999).

The criteria for early release established by the BOP are set forth in 28 C.F.R. § 550.58. This rule provides, in pertinent part:

> An inmate who was sentenced to a term of imprisonment . . . for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, . . . for early release by a period not to exceed 12 months.
>
> (a) Additional early release criteria.
>
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> * * * *
>
> (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses;
>
> * * * *
>
> (vi) Inmates whose current offense is a felony:
>
> * * * *
>
> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)[.]

28 C.F.R. § 550.58.

Petitioner is currently serving a 33-month sentence for possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (*See* Gov't Resp. App. at 001-02). While possession of ammunition is not considered a "crime of violence" by the BOP, the Director has determined that section 922(g) offenders should be denied early release eligibility because, by its nature, the offense "presents a serious potential risk of physical force against the person or property of another." BOP Program Statement ("PS") 5162.04 at 9, ¶ 7 (Oct. 9, 1997). *See also Larkins v. Barron*, No. 5:06-CV-06/RS, 2007 WL 1464093 at *3 (N.D. Fla. May 17, 2007). In addition, petitioner has a prior conviction for aggravated assault. (*See* Gov't Resp. App. at 010). That conviction also makes him ineligible for early release under BOP regulations. *See* 28 C.F.R. § 550.58(a)(1)(iv).

1.

Petitioner first contends that his categorical exclusion from eligibility for early release violates due process. In order to establish a due process violation, petitioner must first demonstrate that he has a "liberty interest" in obtaining a sentence reduction after successful completion of a RDAP. A liberty interest may be created either under the Due Process Clause or by statute. *See Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007) (citing cases). In the prison context, the Due Process Clause creates a liberty interest in punishment that is not "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id., quoting Sandin v. Conner*, 515 U.S. 472, 479 n.4, 115 S.Ct. 2293, 2297 n.4, 132 L.Ed.2d 418 (1995) (internal quotations omitted). "So long . . . as the punishment is within the normal limits or range of custody

which the conviction has authorized the State to impose, there is no violation of a protected liberty interest conferred by the Due Process Clause." *Id.* (citations and internal quotations omitted).[2]

Where the Due Process Clause does not create a liberty interest, the government can create one by statute. *Id.* A statute may create a liberty interest that is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id., quoting Sandin*, 115 S.Ct. at 2300. The hallmark of a statute that does not create a liberty interest is discretion. As the Fifth Circuit observed in *Richardson*:

> Where the statute grants the prison administration discretion, the government has conferred no right on the inmate. Thus, a protected liberty interest exists only when a regulation uses mandatory language to place a substantive limit on official discretion. A unilateral expectation of certain treatment is insufficient; a prisoner must have a legitimate claim of entitlement to it.

*Id.* (citations and internal quotations omitted).

In this case, neither the Due Process Clause nor any federal statute or regulation confers a liberty interest in a sentence reduction upon the successful completion of a RDAP. Petitioner has not suffered any punishment "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Richardson*, 501 F.3d at 419. The BOP rule that categorically excludes him from eligibility for early release means only that petitioner will serve the remainder of his sentence under typical circumstances. Similarly, there is no mandatory language in

---

[2] Examples of punishment that implicate a constitutionally protected liberty interest are the involuntary transfer of a prisoner to a mental hospital for treatment and the involuntary administration of psychotropic drugs to a mentally ill prisoner. *See Vitek v. Jones*, 445 U.S. 480, 493-94, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980).

18 U.S.C. § 3621(e) or any BOP regulation that requires inmates to be released upon successful completion of a substance abuse treatment program. *Id.*, citing *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998); *see also Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1679 (1998) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest."). Because petitioner has no protected liberty interest in receiving a sentence reduction, he cannot establish a due process violation.

2.

Petitioner further alleges, without elaboration, that the BOP violated his rights under the Equal Protection Clause by denying him early release. In order to state an equal protection claim, petitioner must show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir.), *cert. denied*, 125 S.Ct. 153 (2004). Here, petitioner has not identified any similarly-situated prisoners, i.e. inmates serving sentences for possession of ammunition by a convicted felon, who were deemed eligible for early release. Nor is there any evidence of discriminatory intent on the part of the BOP in categorically excluding from early release inmates serving sentences for certain firearms offenses. Without such evidence, petitioner cannot establish an equal protection violation. *See Sonnier v. Francis*, 217 Fed.Appx. 410, 411, 2007 WL 509544 at *1 (5th Cir. Feb. 14, 2007).

B.

The bulk of petitioner's motion is devoted to the argument that the BOP rule preventing his early release, 28 C.F.R. § 550.58, violates the APA. Under the APA, a court must set aside any

agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although petitioner has failed to articulate his claim with precision, he apparently believes that section 550.58 is "arbitrary and capricious" because it categorically excludes from early release inmates serving sentences for certain types of crimes and inmates with prior convictions for certain offenses, notwithstanding the successful completion of a substance abuse treatment program.

That was the holding of the Ninth Circuit in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). In *Arrington*, 18 federal prisoners serving sentences for offenses involving firearms, explosives, or other dangerous weapons challenged section 550.58 on the ground that the BOP failed to provide a rationale for the categorical exclusion of inmates who are otherwise statutorily eligible for early release. While recognizing that the BOP has discretion to categorically exclude certain classes of inmates from early release, the court noted than an agency must articulate a rationale when exercising that discretion. *Arrington*, 516 F.3d at 1114. The court went on to hold that neither of the two rationales stated by the BOP--that offenders with firearms convictions might pose an increased risk to the public and that there is a need for uniformity in the application of eligibility regulations--withstood even the "narrow and deferential standard of review under the APA." *Id.* at 1113-14. According to the court, there was absolutely no evidence in the administrative record that prisoners convicted of firearms offenses pose a greater threat to public safety than prisoners serving sentences for other offenses. *Id.* at 1114. As to the second rationale, the court wrote:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by

-7-

>       categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically *excluding* such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

*Id.* (emphasis in original).

*Arrington* has been cited by federal prisoners across the country in habeas petitions challenging their categorical exclusion from early release. However, no court outside the Ninth Circuit has followed that decision. Most courts have criticized *Arrington* as contrary to *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), wherein the Supreme Court upheld a nearly identical version of section 550.58. Applying the deferential standard of review accorded to agency action set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the six-judge majority in *Lopez* held that the categorical exclusion from early release of certain inmates based on their preconviction conduct was a reasonable exercise of BOP discretion under 18 U.S.C. § 3621(e). *Lopez*, 121 S.Ct. at 722-23. The majority opinion specifically noted that the BOP "need not blind itself to preconviction conduct that the agency reasonably views as jeopardizing life and limb," *id.*, 121 S.Ct. at 723, and that the agency "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Id.* at 724. To date, at least three district courts have held that *Lopez* precludes any challenge to section 550.58 under the APA. *See Minotti v.*

*Whitehead*, ___ F.Supp.2d ___, 2008 WL 4791462 (D. Md. Oct. 31, 2008); *Neal v. Grondolsky*, No. 08-2477 NLH, 2008 WL 4186901 (D.N.J. Sept. 9, 2008); *Gatewood v. Outlaw*, No. 2-08-CV-0054 WRW/BD, 2008 WL 2002650 (E.D. Ark. May 8, 2008).

Although *Lopez* did not discuss the APA,[3] its "explanatory language" provides guidance in future cases. *See Carey v. Musladin*, 549 U.S. 70, 79, 127 S.Ct. 649, 655, 166 L.Ed.2d 482 (2006) (Stevens, J., concurring). As the court in *Gatewood* explained:

> The Supreme Court . . . seemed well aware of the controlling principles embodied in the APA. This is evident from the Supreme Court's discussion of deference owed to the BOP under *Chevron*. The Court also discussed the BOP's argument that it must only interpret the statute reasonably under *Chevron*, and in a manner that is not arbitrary or capricious under 5 U.S.C. § 706(2)(A) of the APA. The Court agreed with the BOP's position. The Court again discussed *Chevron* deference and found the BOP's interpretation reasonable. The Court explicitly found 28 C.F.R. § 550.58 to be permissible and reasonable under its analysis.

*Gatewood*, 2008 WL 2002650 at *4 (internal citations omitted).

A slightly different approach was taken by the court in *Minotti*. Recognizing that the standards of review under *Chevron* and the APA are not identical, *Minotti* rejected *Arrington* on the basis that section 550.58 was, in fact, intended to promote uniformity in the application of eligibility regulations:

> Closer examination of *Arrington* reveals the fatal flaw in the Ninth Circuit's reasoning. The BOP provided an explanation for why it exercised its discretion to categorically exclude rather than include an entire class of inmates: it was concerned about uniformity. However, that was not an explanation that the Ninth Circuit was willing to accept and, as such, the Ninth Circuit substituted its judgment for that

---

[3] *Lopez* expressly declined to consider whether the prior version of section 550.58 violated the notice and comment requirement of the APA. *See Lopez*, 121 S.Ct. at 724 n.6. However, the BOP complied with that requirement in promulgating the final version of the rule that is the subject of petitioner's federal writ.

> of the agency. The legislative history behind § 3621 explicitly notes that "[s]ubstance abuse treatment for prison inmates is a powerful tool for reducing recidivism, easing prison overcrowding, and ultimately preventing crime." In amending § 3621(e)(2)(B), the House Report noted that the amendment "authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and *uniformly applied* by the [BOP]. Moreover, the Supreme Court explicitly agreed with and deferred to the BOP's "reasonabl[e] conclus[ion] that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." Taken in context, the BOP's concern about uniformity in application is not arbitrary or capricious but rather is the consequence of its fidelity to Congress's mandate. The connection between firearms, drug offenses, and violence is fully supported by the language of the statute, *Lopez*, and just plain common sense.

*Minotti*, 2008 WL 4791462 at *10 (internal citations omitted) (emphasis in original).

An agency rule is considered arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 44, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). Long before *Lopez*, the Fifth Circuit upheld the 1997 version of section 550.58 as "consistent with the letter and spirit of the [BOP's] authority as derived from section 3621(e)." *Venegas*, 126 F.3d at 765. In so holding, the court agreed with the BOP that "a sufficient nexus exists between the offenses at issue and a substantial risk of violence[.]" *Id.* When the BOP promulgated the final version of the rule in 2000, it continued the categorical exclusion from early release of inmates, like petitioner, who are serving sentences for weapons offenses, notwithstanding the successful completion of a substance abuse treatment

program. Regardless of whether the administrative record relating to the final version of section 550.58 contains evidence of the connection between such weapons offenses and the risk of future violence, that nexus has been recognized by the Fifth Circuit and other courts with respect to the prior version of the rule. *Id.*; *see also Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999); *Parsons v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998). Far from being the type of "*post hoc* rationalization" criticized by the *Arrington* court, the BOP rationale for categorically excluding from early release those inmates serving sentences for firearms offenses was repeatedly expressed in judicial opinions before the final version of the rule was promulgated in 2000.

The court cannot fault the BOP for failing to include in the administrative record what is supported by the statute, *Lopez*, and "just plain common sense"--that there is a nexus between inmates serving sentences involving the possession of firearms, explosives, and other dangerous weapons and the risk of future violence associated with early release. Nor is the other rationale stated by the BOP for categorically excluding such inmates from early release--the need for uniformity in the application of eligibility regulations--arbitrary and capricious. Accordingly, the court should decline to follow *Arrington* and overrule this ground for relief.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 10, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE